UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
T.V. SESHAN M.D., P.C.,

                                        Plaintiff,

          - against -

BLUE CROSS BLUE SHIELD ASSOCIATION,

                                        Defendant.
---------------------------------------------------------------x

**OPINION & ORDER**

No. 25-CV-499 (CS)
No. 25-CV-1255 (CS)
No. 25-CV-1264 (CS)
No. 25-CV-2049 (CS)

<u>Appearances</u>:

Debra A. Clifford
Gottlieb & Greenspan, LLC
Fair Lawn, New Jersey
*Counsel for Plaintiff*

Katherine M. Katchen
Reed Smith LLP
Philadelphia, Pennsylvania

Niyati Ahuja
Reed Smith LLP
New York, New York

Jason T. Meyer
Reed Smith LLP
Chicago, Illinois
*Counsel for Defendant*

Seibel, J.

          Before the Court is Defendant's motion to dismiss, (499 Dkt. No. 39),[1] and Plaintiff's

cross-motion to confirm the arbitration awards, (499 Dkt. No. 42).  For the foregoing reasons,

Defendant's motion is GRANTED, and Plaintiff's motion is DENIED.

---

          [1] Defendant moves to dismiss Plaintiff's complaint in each of four consolidated actions:
*T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Association*, No. 25-CV-499; *T.V. Seshan*

## I.    BACKGROUND

For purposes of the motion to dismiss, I accept as true the facts, but not the conclusions, as set forth in Plaintiff's complaints.  (499 Dkt. No. 1 ("499 Compl."); 1255 Dkt. No. 1 ("1255 Compl."); 1264 Dkt. No. 1 ("1264 Compl."); 2049 Dkt. No. 1 ("2049 Compl.").)

### A.    Facts

Plaintiff, T.V. Seshan, M.D., P.C., is a medical provider comprised of a team of neurologists who specialize in intraoperative neurophysiological monitoring.  (499 Compl. ¶ 7.) On June 28, 2023, Plaintiff performed neuromonitoring services during surgery on patient R.V. (*Id.* ¶ 8; 1264 Compl. ¶ 8.)  At the time of the treatment, R.V. was a beneficiary of the Blue Cross Blue Shield Federal Employee Program of New York, which is a health insurance program for federal employees privately underwritten by Defendant.  (499 Compl. ¶¶ 9-10; 1264 Compl. ¶¶ 9-10.)  After treating R.V., Plaintiff submitted a Health Insurance Claim Form medical bill to Defendant seeking payment.  (499 Compl. ¶¶ 12, 14-15; 1264 Compl. ¶ 12.)  Specifically, Plaintiff billed Defendant in the amount of $5,817 under Current Procedural Terminology ("CPT") code 95955, and Defendant paid $59.81.  (499 Compl. ¶ 14.)  Plaintiff also billed Defendant in the amount of $14,000 under CPT code 95886, and Defendant paid $103.12.  (*Id.* ¶ 15.)  Finally, Plaintiff billed Defendant in the amount of $11,132 under CPT code 95938-26, and Defendant paid $51.15.  (1264 Compl. ¶¶ 12-13.)  The patient responsibility portion of Defendant's explanation of benefits ("EOB") for all relevant codes stated that the patient's responsibility was $0 and provided reason code 600, which is defined as "Medicare Participating

---

*M.D., P.C. v. Blue Cross Blue Shield Association*, No. 25-CV-1255; *T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Association*, No. 25-CV-1264; and *T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Association*, No. 25-CV-2049.  (*See* No. 25-CV-499 Minute Entry dated Apr. 3, 2025.)  I will refer to documents found on the docket of No. 25-CV-499, the lead case, as "499 Dkt. No." and use the same convention for documents found on dockets of the related cases.

Provider." (*Id.* ¶ 14; 499 Compl. ¶ 16.) For other CPT codes not at issue, Defendant's EOB referenced reason code 629, which is defined as "Surprise Billing – Member Protected from Balance Billing." (499 Compl. ¶ 17; 1264 Compl. ¶ 15.)

Plaintiff was an out-of-network provider and as such did not have a network contract with Defendant that would determine or limit payment for Plaintiff's services to Defendant's beneficiaries. (499 Compl. ¶ 18.) Plaintiff asserts that the payment process for Plaintiff's services is governed by the Federal No Surprises Act ("NSA") because the services provided were rendered "emergently/inadvertently." (*Id.* ¶ 19; 1264 Compl. ¶ 17.) Pursuant to the NSA, an out-of-network provider has the right to dispute a health plan's reimbursement for qualifying out-of-network services. (499 Compl. ¶¶ 18, 21; 1264 Compl. ¶¶ 16, 19.) Plaintiff disputed Defendant's payments and initiated a thirty-day negotiation period as required under the NSA. (499 Compl. ¶ 22; 1264 Compl. ¶ 20.) After Plaintiff failed to resolve the dispute during the negotiation period, Plaintiff initiated three arbitrations related to the services rendered to patient R.V. as part of the Independent Dispute Resolution ("IDR") process called for by the NSA. (499 Compl. ¶¶ 23-25; 1264 Compl. ¶ 21.) In Arbitration Dispute #DISP-649190, which concerned the bill for CPT code 95955, the arbitrator ruled in Plaintiff's favor and awarded Plaintiff $3,532.90 total. (499 Compl. ¶ 28.) In Arbitration Dispute #DISP-649188, which concerned the bill for CPT code 95886, the arbitrator ruled in Plaintiff's favor and awarded Plaintiff $14,000 total. (*Id.* ¶ 34.) Finally, in Arbitration Dispute #DISP-649189, which concerned the bill for CPT code 95938-26, the arbitrator ruled in Plaintiff's favor and awarded Plaintiff $10,559 total. (1264 Compl. ¶ 24.) Pursuant to the NSA, the carrier has thirty days from the date of the arbitration award to issue the additional payment. (*Id.* ¶ 25; 499 Compl. ¶ 35.) Defendant has failed to issue any of the payments to Plaintiff even though, at the time the Complaints were

3

filed, over 300 days had passed since the arbitrator issued the awards.  (499 Compl. ¶¶ 30, 33, 36, 46; 1264 Compl. ¶¶ 26, 33.)

Similarly, on August 25, 2023, Plaintiff provided neuromonitoring services during a surgical procedure on patient D.H.  (1255 Compl. ¶ 8; 2049 Compl. ¶ 6.)  At the time of the treatment, D.H. was a beneficiary of the Blue Cross Blue Shield Federal Employee Program of New York.  (1255 Compl. ¶ 9; 2049 Compl. ¶ 7.)  After treating D.H., Plaintiff submitted a Health Insurance Claim Form medical bill to Defendant.  (1255 Compl. ¶ 12; 2049 Compl. ¶ 9.)  First, Plaintiff billed Defendant in the amount of $16,579.25 under CPT code 95939-26, for which Defendant paid $131.28.  (1255 Compl. ¶¶ 13-14.)  Plaintiff also billed Defendant in the amount of $6,000 under CPT code 95861-26-59, and Defendant paid $90.23.  (*Id.* ¶¶ 29-30.)  Plaintiff billed Defendant in the amount of $11,132 under CPT code 95938-26, and Defendant paid $50.27.  (*Id.* ¶¶ 45-46.)  Finally, Plaintiff billed Defendant in the amount of $12,000 under CPT code 95870-26, and Defendant paid $43.54.  (2049 Compl. ¶¶ 9-11.)

Plaintiff disputed these payments and initiated the thirty-day negotiation period as required by the NSA, because Plaintiff was an out-of-network provider who rendered its services "emergently/inadvertently."  (1255 Compl. ¶¶ 17-20; 2049 Compl. ¶¶ 14-17.)  When negotiations failed, Plaintiff initiated four arbitrations corresponding to each bill for services rendered to D.H.  (1255 Compl. ¶¶ 21, 37, 53; 2049 Compl. ¶ 18.)  In Arbitration Dispute #DISP-772034, which concerned the bill for CPT code 95939-26, the arbitrator ruled in Plaintiff's favor and awarded Plaintiff $15,000 total.  (1255 Compl. ¶ 24.)  In Arbitration Dispute #DISP-772038, which concerned the bill for CPT code 95861-26-59, the arbitrator ruled in Plaintiff's favor and awarded Plaintiff $5,189 total.  (*Id.* ¶ 40.)  In Arbitration Dispute #DISP-772037, which concerned the bill for CPT code 95938-26, the arbitrator ruled in Plaintiff's favor

4

and awarded Plaintiff $9,178 total.  (*Id.* ¶ 56.)  Finally, in Arbitration Dispute #DISP-772035, which concerned the bill for CPT code 95870-26, the arbitrator ruled in Plaintiff's favor and awarded Plaintiff $2,288 total.  (2049 Compl. ¶ 21.)  Defendant has failed to issue any of the payments to Plaintiff even though, at the time the Complaints were filed, over 300 days had passed since the arbitrator issued the awards.  (1255 Compl. ¶¶ 26-27, 42-43, 58-59; 2049 Compl. ¶¶ 23-24.)

### B.    **Procedural History**

Plaintiff filed its complaint in the lead case on January 17, 2025.  (*See* 499 Compl.) Plaintiff filed its complaints in Nos. 25-CV-1255 and 25-CV-1264 on February 12, 2025.  (*See* 1255 Compl.; 1264 Compl.)  Plaintiff filed its complaint in No. 25-CV-2049 on March 12, 2025. (*See* 2049 Compl.)  Each complaint seeks confirmation of the arbitration awards under 9 U.S.C. § 9, and brings a claim against Defendants Blue Cross Blue Shield Association ("BCBSA") and (except in No. 25-CV-2049) Anthem Blue Cross Blue Shield ("Anthem") for violation of the NSA.  (*See generally* 499 Compl.; 1255 Compl.; 1264 Compl.; 2049 Compl.)

On February 28, 2025, Defendant BCBSA filed a pre-motion letter in the lead case in anticipation of its motion to dismiss.  (499 Dkt. No. 18.)  BCBSA also requested pre-motion conferences in Nos. 25-CV-1255 and 25-CV-1264.  (1255 Dkt. No. 9; 1264 Dkt. No. 9.)  Before the pre-motion conference, Plaintiff voluntarily dismissed against Defendant Anthem.  (499 Dkt. No. 21; 1255 Dkt. No. 12; 1264 Dkt. No. 12.)  On April 3, 2025, I held a joint pre-motion conference, at which I expressed my willingness to accept reassignment of a similar case then pending before Judge Karas; ordered consolidation of the three of Plaintiff's cases pending before me, as well as the fourth were it to be reassigned; and set a briefing schedule on the

motion to dismiss.  (*See* Minute Entry dated Apr. 3, 2025.)  On April 11, 2025, Judge Karas's

case, No. 25-CV-2049, was reassigned to me.  (*See* 2049 Dkt. Entry dated Apr. 11, 2025.)

On May 28, 2025, Defendant informed the Court that Plaintiff intended to file a cross-

motion to confirm the arbitration awards and requested an extension of time to oppose.  (499

Dkt. No. 31.)  The Court granted Defendant's request and set a schedule for the remainder of the

briefing on Plaintiff's cross-motion.  (499 Dkt. No. 32.)  The instant motions followed.  (*See* 499

Dkt. Nos. 39, 42.)

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555.  While Rule 8 "marks a notable and generous departure

from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

---

[2] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    DISCUSSION

"On December 27, 2020, Congress passed the [NSA] to address the issue of patients facing unexpected – and often exceedingly large – medical bills after they received treatment from out-of-network providers." *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*, 145 F.4th 212, 219 (2d Cir. 2025).  The NSA protects patients by "relieving [them] from financial liability for surprise bills and creating an [IDR] process for billing disputes between providers and insurers." *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 273 (5th Cir. 2025).  "If there is a dispute between the healthcare plan and the provider regarding the proper compensation amount, there is a 30-day open negotiation period." *Neurological Surgery Prac. of Long Island, PLLC*, 145 F.4th at 219.  If the parties are unable to reach an agreement during that period, either party may initiate an IDR. *See Mod. Orthopaedics of NJ v. Premera Blue Cross*, No. 25-CV-1087, 2025 WL 3063648, at *3 (D.N.J. Nov. 3, 2025).

Under the NSA, the Secretary of the Department of Health and Human Services ("HHS") as well as the Secretaries of Labor and Treasury, are responsible for "certify[ing] independent entities with 'sufficient medical, legal, and other expertise' to serve as referees to the IDR." *Id.*

at *4 (quoting 42 U.S.C. § 300gg-111(c)(4)(A)).  The parties either select a certified independent dispute resolution entity ("CIDRE") to referee the proceeding or HHS assigns them one.  *See* 42 U.S.C. § 300gg-111(c)(4)(F).  The IDR process proceeds before the CIDRE via "baseball-style" dispute resolution, whereby the parties each submit an offer, and the CIDRE selects one party's offer as the award.  *See Guardian Flight, L.L.C.*, 140 F.4th at 273; *GPS of N.J. M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. 22-CV-6614, 2023 WL 5815821, at *2 (D.N.J. Sept. 8, 2023).  Each side submits additional information that it believes supports its offer, but the CIDRE "does not conduct in-person hearings or conduct briefings like a court would."  *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *4.  To determine the proper award, the CIDRE considers the information provided by the parties and the following factors:

> 1. The qualifying payment amounts for comparable items or services in the same region, in the same year;
> 2. The level of training, experience, quality, and outcomes of the provider;
> 3. The market share held by the provider or that of the insurer in the region;
> 4. The complexity involved in providing the service or item; and how acutely it was required by the patient;
> 5. The teaching status, case mix, and scope of services of the provider;
> 6. Demonstrations of good faith efforts, or lack thereof, o[f] the provider and insurer to enter into a network contract; and
> 7. Contracted rates between the insurer and the facility where the item or service was furnished, if such rates were in effect within the last four (4) plan years.

*Id.* (citing 42 U.S.C. § 300gg-111(c)(5)(C)(i)-(ii)).

After the CIDRE selects an offer, the award becomes binding absent a fraudulent claim or evidence of misrepresentation of facts.  *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i); *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1079-80 (M.D. Fla. 2023), *appeal dismissed*, No. 24-10134, 2024 WL 3402119 (11th Cir. May 30, 2024), and *aff'd sub nom. Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, No. 24-10135, 2025 WL 3222820 (11th Cir. Nov. 19, 2025).  If an additional payment is required under the award, the insurer must remit

payment within thirty days.  *See* 42 U.S.C. § 300gg-111(c)(6); *Neurological Surgery Prac. of Long Island, PLLC*, 145 F.4th at 219.  These awards "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of [T]itle 9," which is the Federal Arbitration Act.  42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).  Section 10(a) provides that a federal court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

### A.    Section 9 of the Federal Arbitration Act

Plaintiff's complaints seek to confirm the arbitration awards under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9.  Defendant argues that § 9 is inapplicable because the FAA requires a written agreement to arbitrate, which does not exist here, and because the NSA does not refer to or incorporate § 9.  (499 Dkt. No. 40 ("D's Mem.") at 1, 9-12.)  Plaintiff argues the awards are enforceable pursuant to § 9 because the NSA's language that an IDR award shall become "binding" clearly shows it contemplates judicial enforcement; the NSA did not need to incorporate § 9, unlike other sections of the FAA; the NSA's IDR process is similar to arbitration under the FAA; and any other result would undermine Congressional intent and render the NSA meaningless.  (*See* 499 Dkt. No. 41 ("P's Opp.") at 8-13.)

9

"Section 9 of the FAA sets forth the process by which a prevailing party in an arbitration can have his award enforced by the Courts." *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *5. Specifically, § 9 provides:

> If the parties *in their agreement* have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified *in the agreement* of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (emphasis added). From this language, it is clear that § 9, like the FAA as a whole, contemplates a written arbitration agreement between the parties. *See, e.g.*, *id.* § 2 (governing validity of written agreement to arbitrate); *id.* § 4 (governing failure to arbitrate under written agreement for arbitration); *see Med-Trans Corp.*, 700 F. Supp. 3d at 1083 ("[A]rbitration, at least under the FAA, assumes an 'agreement' or 'contract' to arbitrate."). Accordingly, § 9 is inapplicable to IDR awards because parties to an IDR do not have an agreement to arbitrate. *See Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *6 (Section 9 inapplicable to IDR in part because no contract exists between parties to IDR, let alone agreement to arbitrate disputes through IDR process); *Drs. Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.*, No. 24-CV-20428, 2025 WL 742761, at *3 & n.1 (S.D. Fla. Mar. 9, 2025) (Section 9 inapplicable to dispute over IDR award because parties did not have agreement to arbitrate and thus § 9 could not render action live case or controversy), *appeal dismissed*, No. 25-11110, 2025 WL 1835950 (11th Cir. June 13, 2025); *see also Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of N.J.*, 790 F. Supp. 3d 129, 136 (E.D.N.Y. 2025) (FAA assumes an agreement to arbitrate and without agreement between parties to IDR, no subject matter jurisdiction under FAA § 9).

Plaintiff seems to argue that, even in the absence of an agreement, the prevailing party in an IDR may have its award enforced by a court pursuant to § 9 because the IDR process was modeled in significant part on FAA arbitration, which provides for judicial enforcement.  (P's Opp. at 13.)  Judge Brian R. Martinotti of the District of New Jersey recently addressed a similar argument and found it to be without merit.  *See Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *5-6.  The Court finds his analysis persuasive.  As Judge Martinotti explained, "while there are superficial similarities between the IDR and arbitration," including that both involve an independent panel that examines evidence to determine a proper award, "they are premised on fundamentally different authorities."  *Id.* at *5.  As mentioned, "arbitration, at least under the FAA, assumes an 'agreement' or 'contract' to arbitrate," while "[t]he NSA's IDR . . . is statutorily compelled."  *Med-Trans Corp.*, 700 F. Supp. 3d at 1083.  But that is not the only difference between NSA IDR and FAA arbitration.  For example, in an arbitration governed by the FAA, if a party fails to submit to arbitration, the other parties can compel arbitration through the courts.  *See Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *6.  But when a party fails to submit to an IDR, the result is an effective default.  *See id.*  Further, CIDREs who oversee the IDR "are subject matter experts certified by the HHS Secretary specifically to handle payment disputes," whereas parties to an arbitration governed by the FAA may choose any arbitrator they like.  *Id.*  Finally, the IDR process is highly restricted by statute, as it proceeds via baseball-style arbitration and ends with the CIDRE choosing an award from one of the offers submitted.  *See id.*  By contrast, parties to other arbitrations may agree to a more robust process with discovery and a hearing, and the arbitrator has more flexibility to grant any remedy or relief.  *See id.*  Thus, "the IDR process is far too different from arbitration for this Court to conclude that Congress implied for the FAA to govern the IDR process in general."  *Id.* at *7.

11

Plaintiff further argues that the NSA's language that IDR awards are binding implicitly permits federal courts to confirm awards under the FAA.  (P's Opp. at 8-11.)  I find that other evidence from the statute demonstrates that that was not Congress's intent.[3]  Congress incorporated § 10(a) of the FAA, which deals with vacatur, into the NSA, *see* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II), but it did not incorporate § 9.  Plaintiff argues that the NSA's express incorporation of § 10(a) and not § 9 is inconsequential because Congress did not need to incorporate § 9.  (P's Opp. at 11.)  Specifically, Plaintiff argues that because IDR awards are binding when issued, they do not require judicial confirmation and thus there is no reason for the NSA to reference § 9.  (*See id.* (citing *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 227 (D. Conn. 2025).)  The Court does not follow this argument, which appears to contradict both Plaintiff's contention that the IDR process and arbitration are so similar that awards from both processes must be judicially enforceable, and its argument that courts must confirm IDR awards.  In any event, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Med-Trans Corp.*, 700 F. Supp. 3d at 1083. In the NSA, "Congress invoked four paragraphs of the FAA to describe cases where an IDR decision may be subject to judicial review – nothing more."  *Id.*  The express incorporation of those four paragraphs – *see* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (incorporating 9 U.S.C. § 10(a)(1)-(4)) – which provide only for vacatur of an award, and the failure to incorporate any

---

[3] Plaintiff contends that "[w]here there is no exclusive jurisdiction imposed upon an administrative court or entity to confirm *or* vacate NSA IDR awards, the fact that the awards are legally 'binding' carries an implicit judicial enforcement mechanism."  (P's Opp. at 9 (emphasis in original).)  But Plaintiff cites no authority for that proposition, and that is not the correct standard.  Rather, as explained below, "Congress need not expressly create administrative exclusivity; reference to administrative enforcement combined with the absence of other enforcement provisions, creates a presumption that administrative enforcement of the statute is exclusive." *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *11.

others, including § 9, indicates Congress did not intend to permit judicial confirmation of IDR awards. *See, e.g.*, *Brennan-Centrella v. Ritz-Craft Corp. of Pa.*, 942 F.3d 106, 111 (2d Cir. 2019) (applying canon of construction *expressio unius est exclusio alterius* to conclude legislature likely meant to exclude remedy not mentioned in statute, noting it would be strange for statute to mention several remedies but leave another to implication); *cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). This is bolstered by the fact that when Congress has sought to incorporate § 9, it has done so explicitly. *See e.g.*, 5 U.S.C. § 580(c) ("A final award is binding on the parties to the arbitration proceeding, and may be enforced pursuant to sections 9 through 13 of title 9."); *see also Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *5 (that Congress incorporated § 9 in other statutes but did not do so in NSA was indicative of Congress's intent); *Guardian Flight, L.L.C.*, 140 F.4th at 276-77 (same) (collecting authorities). Because Congress clearly knows how to explicitly incorporate § 9, but chose not to do so in the NSA, I cannot supply the provision myself. *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision.").

Finally, although Plaintiff argues that the failure to allow judicial confirmation of IDR awards via § 9 would render the NSA's language meaningless, I disagree. Not only may I not ignore the plain text and structure of the NSA to "permit parties to use the FAA to obtain remedies under the NSA that Congress chose not to provide," *Jeffrey Farkas, M.D., LLC*, 790 F. Supp. 3d at 138, but, as will be discussed in more detail below, declining to judicially enforce

13

awards, through the FAA or otherwise, does not leave IDR awards unenforceable. *See infra* Section III.B.

The cases upon which Plaintiff relies to support its contrary position are largely distinguishable. First, the court in *Worldwide Aircraft Servs. Inc. v. Worldwide Ins. Servs., LLC*, explained that there the insurer did not raise the issue of whether the court lacked the power to confirm arbitration awards under the FAA because it only incorporates those provisions of the FAA that concern vacatur, and instead assumed that the FAA applied to the NSA in full. *See* No. 24-CV-840, 2024 WL 4226799, at *4 n.3 (M.D. Fla. Sept. 18, 2024). Thus, the court considered the argument waived and confirmed the award without discussing the merits of that argument. *See id.* Plaintiff also relies on *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214 (D. Conn. 2025) ("*Aetna*"). But there the plaintiff only sought enforcement of the awards under the NSA, and the court considered only whether the NSA implies a private right of action. *See id.* at 223, 225-29. It did not separately consider whether the Court may confirm an IDR award pursuant to 9 U.S.C. § 9.

Finally, the procedural posture of *GPS of N.J. M.D., P.C. v. Horizon Blue Cross & Blue Shield* is different from this case. *See* No. 22-CV-6614, 2023 WL 5815821 (D.N.J. Sept. 8, 2023). In *GPS*, the court confirmed an IDR award after denying a petition to vacate the award. *Id.* at *1. The Court found that judicial review of the award was permitted in that instance because review was requested pursuant to FAA § 10(a), which was incorporated into the NSA. *Id.* at *3-4. Although the court briefly noted that the NSA's language that awards are to be "final and binding" implicitly gives federal courts authority to confirm awards and compel compliance, *id.* at *10, the *GPS* court did not grapple with any of the other arguments raised here as to why § 9 is inapplicable, *see Med-Trans Corp.*, 700 F. Supp. 3d at 1084 (*GPS* court "simply had no

need to grapple with the broader applicability of the FAA to the NSA" because parties assumed FAA § 9 applied to IDR awards). And, in any case, as explained above, I respectfully disagree that this language evidenced Congress's intent to incorporate FAA § 9 into the NSA in light of the contrary evidence in the statute.

Finally, even if the Court could confirm the award pursuant to § 9, the Court would not have subject matter jurisdiction to do so. "[D]espite being a federal law, Section 9 bestows no federal jurisdiction and instead the plaintiff requires an independent jurisdictional basis on the face of the complaint." *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *7. Where a party seeks confirmation of an arbitral award pursuant to Section 9 of the FAA, the Court may not look through the petition to the claims in the underlying arbitration to determine if there is a federal jurisdictional hook. *See id.*; *Jeffrey Farkas, M.D., LLC*, 790 F. Supp. 3d at 133. Instead, "for a federal court to have the power to confirm an arbitration award under the FAA, the petition must properly invoke diversity jurisdiction, or federal-question jurisdiction." *Jeffrey Farkas, M.D., LLC*, 790 F. Supp. 3d at 133. Diversity jurisdiction here is lacking, as the amount in controversy does not exceed $75,000. (*See* 499 Compl. (seeking $17,369.97 in damages); 1255 Compl. (seeking $29,095.22 in damages); 1264 Compl. (seeking $10,507.85 in damages); 2049 Compl. (seeking $2,244.46 in damages).) Plaintiff's complaint contains a cause of action under the NSA, which would seem to provide the necessary federal jurisdictional hook, but, as I will explain, the NSA does not provide a private right of action and therefore the Court may not exercise federal-question jurisdiction based on the NSA. In the absence of another cause of action, the Court does not have subject matter jurisdiction over the action. *See Jeffrey Farkas, M.D., LLC*, 790 F. Supp. 3d at 138 (dismissing complaint for lack of subject matter jurisdiction

15

where plaintiff sought to confirm IDR award pursuant to FAA and alleged substantive violation of NSA).

Accordingly, I grant Defendant's motion to dismiss Plaintiff's first cause of action.

### B.    Implied Right of Action under the NSA

Plaintiff argues that the NSA contains an implied private right of action, as demonstrated by its rights-creating language, and thus the Court may confirm and enforce an IDR award pursuant to the NSA.  (P's Opp. at 14-20.)  Defendant argues that there is no such private right of action because the NSA precludes judicial review except in limited circumstances, which are not present here, and grants enforcement authority to agencies rather than courts.  (D's Mem. at 12-18.)

"[T]he NSA provides that an IDR award is automatically 'binding upon the parties involved' and thus '*shall not be subject to judicial review*, except in a case described in any of paragraphs (1) through (4) of section 10(a)' of the [FAA]."  *E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, No. 25-CV-1686, 2025 WL 2371537, at *17 (S.D.N.Y. Aug. 14, 2025) (quoting 29 U.S.C. § 1185e(c)(5)(E), which mirrors 42 U.S.C. § 300gg-111(c)(5)(E)) (emphasis in *E. Coast Advanced Plastic Surgery, LLC*), *appeal filed*, No. 25-2204 (2d Cir. Sept. 15, 2025).  Because those paragraphs refer only to vacating an award, clearly "the NSA contains no express right of action to *enforce or confirm* an IDR award."  *Jeffrey Farkas, M.D., LLC*, 790 F. Supp. 3d at 137 (emphasis in original).  To determine whether it contains an *implied* private right of action, "the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014).  To do that, courts must first consider "whether the statute uses rights-creating language, meaning language that

16

focuses on the individuals protected rather than the person regulated," and then "consider whether the statute's methods of enforcement manifest an intent to create a private remedy, as opposed to empowering agencies to enforce their regulations." *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1112 (2d Cir. 2024) (*per curiam*).  Courts must also be "mindful that the Supreme Court has come to view the implication of private remedies in regulatory statutes with increasing disfavor." *Republic of Iraq*, 768 F.3d at 170.

Turning to the first factor, the NSA contains strong, mandatory language regarding an insurer's payment obligations to a provider, as it states that the decision of a CIDRE "shall be binding on the parties involved," 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), and payment "shall be made directly to the nonparticipating provider or facility," *id.* § 300gg-111(c)(6).  As Plaintiff points out, "[s]tatutory 'shall pay' language often reflects congressional intent to create both a right and a remedy." *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *9.  Further, because the statute explicitly names the provider as the beneficiary of the non-prevailing party's payment obligations, 42 U.S.C. § 300gg-111(c)(6), Plaintiff appears to be "one of the class for whose *especial* benefit the statute was enacted." *Republic of Iraq*, 768 F.3d at 170 (emphasis in original); *see Aetna*, 789 F. Supp. 3d at 226 (statute used rights-creating language because NSA provisions were "plainly aimed at compensating providers for their services").  This is true even though patients were also undoubtedly intended to be beneficiaries of the NSA.  *See Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *8.  Thus, the NSA's language focusing on the individuals being protected, like Plaintiff, is an indication of Congress's intent to create a right in favor of Plaintiff.  *See Guardian Flight LLC v. Health Care Serv. Corp.*, 735 F. Supp. 3d 742, 751 (N.D. Tex. 2024) ("[T]he NSA appears to create a right that out-of-network providers are

17

entitled to recover their IDR awards within thirty days."), *aff'd sub nom. Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 273 (5th Cir. 2025).

Nevertheless, although "shall pay" language often reflects an intent to create a right *and* remedy, the rest of the statute's text and its structure indicate that Congress did not intend to create a judicial remedy here. First, as discussed above, the statute states that CIDRE awards "shall not be subject to judicial review" except in cases in which a party moves to vacate the award on four limited grounds. 42 U.S.C. § 300gg-111(c)(5)(E). "Including language almost entirely forbidding judicial review of IDR decisions strongly suggests that Congress did not intend to confer Plaintiff[] a cause of action to enforce IDR awards." *Guardian Flight LLC*, 735 F. Supp. 3d at 750. Nevertheless, Plaintiff argues that the language barring judicial review does not foreclose the Court's ability to enforce an IDR award because judicial enforcement is different from judicial review. (P's Opp. at 19.) But courts have previously rejected this argument, noting that "[t]he term 'judicial review' is broad enough to include a court's order to enforce an IDR award," *Guardian Flight, L.L.C.*, 140 F.4th at 275, as "[r]eview . . . does not refer exclusively to attempts to overturn but to the Court's 'plenary power to *direct and instruct an agent or subordinate* including the right to remand, modify, or vacate any action by the agent or subordinate, or to act directly in place of the agent or subordinate,'" *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *12 (emphasis in original) (quoting *Review*, Black's Law Dictionary (12th ed. 2024)). And courts have held that judicial review covers actions that seek to confirm or enforce dispute resolution awards in other contexts. *See Guardian Flight, L.L.C.*, 140 F.4th at 275-76 (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 611 (1993)). The Court cannot ignore the plain language of the statute and "interpret language forbidding judicial review except to vacate an award to mean forbidding judicial

18

review except to vacate *or enforce* an award." *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *12 (emphasis in original); *see E. Coast Advanced Plastic Surgery, LLC*, 2025 WL 2371537, at *17 (no private right of action to enforce IDR awards based on statutory text that IDR process "shall not be subject to judicial review").

Second, "[w]ere the NSA to create a right without an apparent remedy, that itself [would be] strong evidence that Congress intended judicial enforcement." *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *9. But the NSA provides for administrative enforcement remedies, including federal agency oversight over the IDR process, federal agency authority to compel payment and penalize recalcitrant companies, and state oversight of insurers. *See* 42 U.S.C. § 300gg-22; *see also E. Coast Advanced Plastic Surgery, LLC*, 2025 WL 2371537, at *17 & n.11 (explaining administrative remedy supplied by statute); *Guardian Flight, L.L.C.*, 140 F.4th at 277 (same).[4] "[T]he mere presence of agency enforcement creates a strong presumption against implied private rights of action," *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *9, as "[t]he Supreme Court has instructed that an implied right of action is unavailable where Congress has

_____

[4] Plaintiff, relying on *Aetna*, argues that "'the statutory provisions that Defendant[] cite[s] do not empower agencies to enforce individual IDR awards or to hold health plans and insurers accountable for untimely payments,'" and thus Defendant's argument that the administrative processes were meant to be the exclusive remedy under the NSA is wrong. (P's Opp. at 18 (quoting *Aetna*, 789 F. Supp. 3d at 229).) But in *Aetna*, the defendants focused on the provisions that granted HHS authority to establish a methodology for determining the qualifying payment amount and a process for auditing insurers' and health plans' compliance. *See Aetna*, 789 F. Supp. 3d at 229. Here, Defendant cited to additional provisions, including 42 U.S.C. § 300gg-22(b)(2), (*see* D's Mem. at 5-6), which grants HHS the authority to impose monetary penalties on insurers and health plans, and to which the *Aetna* defendants did not cite, *see Aetna*, 789 F. Supp. 3d at 228 n.6. And, since *Aetna* was decided, in an order denying the defendants' request to file an interlocutory appeal, the *Aetna* court noted that "[i]t is possible [the court] would have reached a different conclusion had that issue [of § 300gg-22] been briefed," as it acknowledged that the Fifth Circuit relied on 42 U.S.C. § 300gg-22 in finding statutory evidence that Congress opted to provide an administrative remedy rather than a private cause of action. *See* Order, *Guardian Flight LLC v. Aetna Life Ins. Co.*, No. 24-CV-680 (D. Conn. Sept. 30, 2025), Dkt. No. 295. Therefore, the analysis on administrative remedies in *Aetna* is inapposite.

19

provided an alternative method of enforcing that provision and where the nature of the relevant provision's text is judicially unadministrable," *E. Coast Advanced Plastic Surgery, LLC*, 2025 WL 2371537, at \*17; *see Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("[The] express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."). Thus, because the statute supplies an administrative remedy, it does not appear that Congress intended to imply a judicial remedy as well. *See Mod. Orthopaedics of NJ*, 2025 WL 3063648, at \*9-12 (inclusion of administrative enforcement negates implied private right of action despite rights-creating language); *E. Coast Advanced Plastic Surgery, LLC*, 2025 WL 2371537, at \*17 (no private right of action to enforce IDR determinations because NSA supplies administrative remedy); *Guardian Flight LLC*, 735 F. Supp. 3d at 751 (nothing in NSA suggests Congress intended to confer corresponding remedy); *FHMC LLC v. Blue Cross & Blue Shield of Ariz. Inc.*, No. 23-CV-876, 2024 WL 1461989, at \*3 (D. Ariz. Apr. 4, 2024) (no implied private right of action under NSA where statute includes procedure for out-of-network providers dissatisfied with amounts paid by insurers).

Plaintiff argues that the administrative remedies provided by the NSA are not adequate, and thus judicial review is necessary to avoid rendering the statute meaningless, as without it, awards are effectively unenforceable. (*See* P's Opp. at 14-15, 17-20.) For instance, Plaintiff alleges that HHS conducts few audits, which are not even mandatory; complaints take months to reach CMS agents; providers receive little to no response when they contact CMS's help desk; and many providers who have won awards through the IDR process remain unpaid even though the thirty-day deadline has passed. (*See id.* at 18-20.) Although the issues Plaintiff raises are concerning, Congress chose to create an administrative enforcement mechanism rather than a judicial one, and "the wisdom of Congress's policy choice is beyond [the Court's] judicial ken."

*Guardian Flight, L.L.C.*, 140 F.4th at 277.  No matter how desirable it may be as a matter of policy to imply a private right of action under the NSA, the Court may not invent a cause of action where Congress did not intend to create one.  *See Sandoval*, 532 U.S. at 286-87; *Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *12; *see also Med-Trans Corp.*, 700 F. Supp. 3d at 1085 n.7 (although plaintiffs argued judicial review was only recourse because of inadequate administrative remedies, court found judicial review of IDR awards not proper vehicle for challenge).[5]

In short, "[a]n implied right of action is incongruous with [the] detailed statutory scheme [provided in the NSA], in which judicial review is limited to specific instances."  *FHMC LLC*, 2024 WL 1461989, at *3.  Accordingly, I join "the substantial majority of the courts to consider the issue," and decline to recognize an implied right of action under the NSA.  *E. Coast Advanced Plastic Surgery, LLC*, 2025 WL 2371537, at *17 (noting all but one court have held there is no private right of action under the NSA to enforce IDR awards).

Because I find that Plaintiff has no private right of action under the NSA, I grant Defendant's motion to dismiss as to that claim.  Because I also dismissed Plaintiff's claim under Section 9, Plaintiff's complaint is therefore dismissed in its entirety, and I need not separately address Plaintiff's cross-motion to confirm the arbitration awards.  *See Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *14 (denying motion to confirm arbitration without discussion apart from analysis on defendant's motion to dismiss).

---

[5] Not only do the administrative remedies outlined in the NSA provide a means for enforcing the statute, but Plaintiff has not contended that it is precluded from bringing suit under traditional state-law causes of action to recover what it is owed.  *See Mod. Orthopaedics of NJ*, 2025 WL 3063648, at *11-12 (explaining NSA does not preempt or displace traditional state-law remedies like unjust enrichment).

## IV.    LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff was put on notice of the potential defects in its claims by Defendant's pre-motion letters, (499 Dkt. No. 18; 1255 Dkt. No. 9; 1264 Dkt. No. 9; 2049 Dkt. No. 11), and the discussion at the pre-motion conference, (*see* Minute Entry dated Apr. 3, 2025), before the briefing on the motion to dismiss.  Yet Plaintiff never asked to amend and has not suggested that it is in possession of facts that would cure the deficiencies identified in this decision.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).  Nor could it, as the problem with Plaintiff's complaints is not a lack of facts, but rather a lack of causes of action.  Because "[t]he problem with [Plaintiff's] causes of action is substantive [and] better pleading will not cure it," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.

22

2000), amendment would be futile, *see Barrett v. United Parcel Serv.*, No. 18-CV-2046, 2020 WL 4016826, at \*3 (E.D.N.Y. May 14, 2020) (denying leave to amend as futile where no cause of action for claim existed in federal court), *report and recommendation adopted sub nom. Barrett v. Loc. 804 Union*, No. 18-CV-2046, 2020 WL 4016016 (E.D.N.Y. July 16, 2020); *see also Watt v. City of N.Y.*, 740 F. Supp. 3d 212, 228 (E.D.N.Y. 2024) (amendment would be futile because cause of action had no basis in New York law); *O'Callaghan v. City of N.Y.*, No. 16-CV-1139, 2016 WL 7177509, at \*10 (S.D.N.Y. Dec. 8, 2016) (amendment would be futile where cause of action plaintiff sought to add did not exist in New York).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's motion to confirm the arbitration awards is DENIED. The Clerk of Court is respectfully directed to terminate the pending motions, (499 Dkt. Nos. 39, 42), and close the four above-captioned consolidated cases.

**SO ORDERED.**

Dated: December 5, 2025
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

23